RE GEORGE B. KNIGHT, FOR RELIEF AS AN INSOLVENT.

PROVIDENCE—MAY 5, 1899.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Proceedings in Insolvency.*

Gen. Laws R. I. cap. 274, § 29, providing for the subsequent rejection of allowed claims in insolvency proceedings, implies that where the objection to the claim is not made until after it has been allowed, the burden of showing its invalidity rests on the objecting creditor.

PETITION IN INSOLVENCY. Heard on exceptions to rulings of register. Exceptions overruled.

MATTESON, C. J. The above named George B. Knight having been adjudged insolvent, his wife, Louisa Knight, proved her claim against his estate for moneys loaned, amounting to $10,500, and the claim was duly allowed by the register. Subsequently Hanley, Hoye & Co., other creditors of the insolvent, objected to the claim of Mrs. Knight, and asked that it be expunged and rejected in whole or in part. At the hearing before the register, counsel for Hanley, Hoye & Co., raised the question whether Mrs. Knight should not be required to prove her claim anew. The register ruled that she should not, and that the burden of showing cause

why her claim should be rejected rested on the creditors objecting to its allowance, to which ruling counsel for the objecting creditors duly excepted. After a formal hearing of the matter the register denied the motion to expunge and reject the claim, and allowed it to stand as originally proved.

The case is now before us on the report of the evidence given before the register, transmitted to the court by him with his findings thereon, on request of the objecting creditors, in accordance with the statute.

(1)   Our opinion is that the ruling of the register on the question of procedure was correct. Gen. Laws R. I. cap. 274, § 29, provides that " claims proved shall be allowed by   .   . the register unless objected to by some one of the parties in interest. Allowed claims may be afterwards rejected for cause shown, after notice and hearing of the parties interested." This language clearly implies that where the objection to the claim does not come to the attention of the register until after he has taken proof of the claim and allowed it, the burden of showing its invalidity shall rest on the creditor objecting ; the claim is to stand unless for *cause shown* it be afterwards rejected.

We see no reason to think that the register erred in his finding on the evidence that the claim of Mrs. Knight was valid and should stand as originally proved.

Exceptions overruled, and case remitted to the register for further proceedings.

*Wilson & Jenckes*, for Louisa Knight.

*McGuinness & Doran*, for Hanley, Hoye & Co.

--------

### STATE *vs.* HORACE P. BECK.

NEWPORT—MAY 8, 1899.

PRESENT : Matteson, C. J., Stiness and Tillinghast, JJ.

(1)   *Construction of Statutes.*

Statutes must be construed with reference to the whole system of which they form a part, and statutes upon cognate subjects may be referred to,

although not strictly *in pari materia*. A penal statute must be strictly construed, and the act constituting the offence must be within both the letter and spirit of the statute. In the construction of such statutes it may be the duty of the court, in giving effect to the manifest intention of the legislature, to restrain, enlarge, or qualify the ordinary and literal meaning of the language used, and if there is a reasonable doubt as to whether the acts done are within the meaning of the statute, the person accused of the violation is entitled to the benefit of the doubt.

(2) *Practice of Dentistry. Rights of Physicians and Surgeons.*

By virtue of the broad and general language used in Gen. Laws R. I. cap. 165, relating to the authority to practice medicine and surgery, physicians and surgeons qualified under the provisions of said chapter are excepted from the restrictions imposed on other persons regarding the practice of dentistry by Gen. Laws R. I. cap. 155, and the amendments thereto.

INDICTMENT charging defendant with practicing dentistry in violation of statute. Heard on demurrer to indictment. Demurrer sustained and indictment quashed.

TILLINGHAST, J. The indictment charges, in substance, that the defendant did unlawfully practice dentistry in Newport on the first day of August, 1898, without first having obtained a certificate from the Board of Registration in Dentistry, and without first having caused his name and place of business to be registered with said board.

The defendant has filed a special plea in bar to said indictment, in which he sets up, in brief, that at the time aforesaid he held a certificate in due form from the State Board of Health ; that he was qualified to practice medicine and surgery by reason of the possession by him of a diploma from a reputable and legally chartered college, endorsed by said Board of Health, by virtue of which he was qualified to practice medicine and surgery in all its branches upon all parts of the human body, including the teeth.

To this plea the attorney-general has demurred, on the ground that a certificate from the State Board of Health authorizing the defendant to practice medicine and surgery, as provided in Gen. Laws R. I. cap. 165, does not authorize him to practice dentistry without having first obtained a certificate from the Board of Registration in Dentistry and

otherwise qualifying himself to practice dentistry in accordance with the provisions of Gen. Laws R. I. cap. 155, as amended by Pub. Laws R. I. cap. 470.

The question presented for our decision under the pleadings, therefore, is whether the defendant had the right, by virtue of his authority to practice medicine and surgery, to practice dentistry. The answer to this question depends upon the construction to be given to the statute regulating the practice of dentistry, taken in connection with that regulating the practice of medicine; as, independent of these statutes, there can be no doubt of the right of the defendant to practice dentistry.

The first law regulating the practice of dentistry in this State was passed on June first, 1888. (See Pub. Laws R. I. cap. 712.) At that time there was no law regulating the practice of medicine. Section 4 of Gen. Laws R. I. cap. 155, as amended by Pub. Laws R. I. cap. 470, § 1, passed May 21, 1897, which is the same in effect as section 4 of the original act, provides that " All persons who hereafter intend to enter the practice of dentistry in this state, shall appear before said board and be examined with reference to their knowledge and skill in dentistry ; and to such as pass a satisfactory examination, certificates to that effect, signed by the president and secretary of the board, shall be issued ; and thereupon the names of such persons receiving certificates as aforesaid shall be registered with said board."

Section 6, as amended by Pub. Laws R. I. cap. 470, § 3, prescribes a penalty for practicing or attempting to practice dentistry in violation of the provisions of the act. On May 16, 1895, the General Assembly passed an act regulating the practice of medicine (see Pub. Laws R. I. cap. 1353), said act now constituting Gen. Laws R. I. cap. 165. This act makes it unlawful for any person to practice medicine or surgery in any of its branches without first exhibiting and registering under oath, in the town or city clerk's office in the town or city where he resides, his authority for so practicing medicine, as prescribed in the act, together with his age, address, place of birth, and the school of medicine to which he pro-

poses to belong.   The authority to practice medicine and sur-
gery under said act is a certificate from the State Board of
Health.

The evident purpose of the General Assembly, in the pas-
sage of the act relating to the practice of dentistry, was to
protect the public from being imposed upon by persons who,
while holding themselves out as competent to extract, clean,
or repair teeth, or replace them by artificial ones, yet from
want of instruction and skill in the art were wholly unfit to
perform such a delicate and highly important function.   See
State v. Mylod, 20 R. I. 632, on p. 637, as to the object of
said chapter 165.   It is a matter of common knowledge that
before the passage of said act the merest novice in the art was
frequently employed to extract and operate upon the teeth,
to the unnecessary discomfort, and sometimes to the perma-
nent injury, of his patient.   These persons were not physi-
cians, and, as a rule, had little or no scientific knowledge
of the human body; and the only knowledge which they
possessed of the art of dentistry was that which they had ac-
quired by a meagre and haphazard practice.   Such knowl-
edge, while it might have been considered sufficient in the
days of our grandfathers, is wholly inadequate for present
demands; for while dentistry, as an independent vocation,
may have had an humble and comparatively recent origin,
yet it has now become a very important branch of medical
science.   See Rehfuss' Dental Jurisprudence, 34, 42.   As said
by Brace, J., in State v. Fisher, 119 Mo. 356: "The fact
that this branch of the medical profession has grown to such
proportions as to have its own independent colleges and to
confer its own degrees, and that it has become necessary that
its practice should be regulated by statute, indicates the im-
portance of the exercise of its functions to the public wel-
fare."   See Rehfuss' Dental Jurisprudence, title "History of
Dental Legislation," 205.

From what we have thus said, it would seem clear that the
reason for the passage of said chapter 155 and the amend-
ments thereto does not apply to the practice of dentistry by
regular physicians.   A physician is one who practices the

art of healing disease and preserving health ; a prescriber of remedies for sickness and disease.   See Century Dictionary, Vol. 4.   He is presumed to be familiar with the anatomy of the human body in its entirety ; to understand the science of physiology and the laws of hygiene, and to be able to minister, as far as may be, to the relief of pain, disease, and physical ailments of all sorts and kinds whatsoever.   And while it is true that many physicians devote themselves entirely to some branch of the medical profession for which they have made special preparations, yet the fact that they have first qualified themselves generally for the practice of medicine and surgery in all its branches, and obtained a license to pursue such practice, must be held to entitle them to operate upon the teeth and jaw, as well as upon other parts of the human organism, unless the statute now under consideration (1) clearly prohibits them.   By the strict terms of said statute, taken by itself, it doubtless does prohibit physicians, as well as all other persons, from practicing dentistry without first obtaining the required certificate, as the inhibition is general and no exception is made in favor of physicians.   Said statute, however, should not, in our judgment, be taken by itself, but should be construed in connection with said chapter 165, which, while perhaps not strictly *in pari materia*, yet deals with the general subject of the practice of medicine and surgery and prescribes the qualifications requisite therefor.

A familiar rule in the construction of statutes is that a statute must be construed with reference to the whole system of which it forms a part, and that statutes upon cognate subjects may be referred to, though not strictly *in pari materia*. Sutherland on Stat. Construc. 284.   Another rule is that a penal statute must be strictly construed, and that the act constituting the offence must be within both the letter and the spirit of the statute.   *Lair* v. *Killmer*, 25 N. J. L. 522 ; *Telegraph Co.* v. *Axtell*, 69 Ind. 199.   And in the construction of such statutes it sometimes becomes the duty of courts, in giving effect to the manifest intention of the legislature, to restrain, enlarge, or qualify the ordinary and literal meaning of the language used.   *Noble* v. *State*, 1 Iowa, 325.

Now by the express terms of said chapter 165, a person holding a certificate, in accordance with the provisions thereof, is authorized to practice medicine and surgery in all its branches. Dentistry is now a well-recognized branch of surgery. A dentist is a dental surgeon. He performs surgical operations upon the teeth and jaw, and, as incidental thereto, upon the flesh connected therewith. His sphere of operations then, as before intimated, is included in the larger one of the physician and surgeon. A fair and reasonable construction of the two statutes taken together, therefore, comes to (2) this: That the General Assembly, by the use of the broad and general language used in said chapter 165 relating to the authority to practice medicine and surgery, must be held to have intended to except physicians and surgeons from the restrictions imposed upon other persons, regarding the practice of dentistry, by said chapter 155 and the amendments thereto. This view is strengthened by the fact, which is common knowledge, that it has always been the custom in this State, and probably everywhere else, for physicians to treat ailing teeth, to extract teeth, and to perform various other professional services which technically come within the purview of dentistry. Physicians who reside in the country towns especially have always been called upon, to a greater or less extent, for the performance of such services. And to now prohibit them from thus treating their patients would be a source of great inconvenience and in many cases of extreme hardship and suffering to the latter, as well as an interference with the proper and legitimate functions of the former. And, as said by defendant's counsel, "any construction of the law that prevents the general practitioner from treating any part of the human body, or restricts him in the discharge of his professional duties, would be a menace to the public health and would deprive the physician of the right to practice a branch of his profession that is as old as the history of medicine itself."

In defining the term "medicine," in the case of *In re Petition of the Medico-Chirurgical College of Philadelphia*, decided February 27, 1899, Judge Dean says: "We take the

word 'medicine' in this common signification, which in the beginning, and yet, with most of us, includes all learning having for its object the care of the health and the cure of the ills of the human body. Even within the recollection of some of us, the practicing physician or family doctor kept in his own office his drugs, compounded them himself, and, not seldom, maintained a dental chair wherein he seated his patients and dosed or extracted their ailing teeth. He had not only been taught dental surgery and pharmacy, but practiced both under his degree from a college of medicine."

By the express exemption of physicians and surgeons from the operation of similar laws in several other States, the principle that dentistry is a branch of medical science has been recognized, as is shown in the following instances:

Section 1, Connecticut law, approved April 4, 1887, provides that "nothing in this act shall interfere with physicians in the discharge of their professional duties."

Section 7, Louisiana law, approved March 10, 1880, provides that "nothing in this act shall apply to regular physicians and surgeons."

Section 8, Maine law, approved March 4, 1891, provides that "nothing in this act shall be so construed as to restrict or interfere with physicians and surgeons in the discharge of their professional duties."

Section 8, Maryland act, approved April, 7, 1886, provides that "nothing shall be so construed as to interfere with the rights and privileges of resident physicians and surgeons in the discharge of their professional duties."

Section 12, Michigan act of September 9, 1883, provides that "nothing in this act shall be construed so as to interfere with physicians and surgeons in their practices as such."

Section 1, Mississippi act, approved February 25, 1882, provides that "the provisions of this act shall not apply to any person holding the diploma of Doctor of Medicine from any reputable medical college."

Section 3, New Hampshire law, provides that "it shall not be lawful for any person, who is not duly authorized to practice medicine or surgery, to practice dentistry, unless," &c.

Section 1, North Carolina law, provides that "it shall be unlawful for any person excepting regularly authorized physicians and surgeons to commence the practice of dentistry, unless," &c.

And, as well stated in the brief of defendant's counsel, in connection with the above citations, "the fact that in so many instances the physicians and surgeons are expressly exempt from the provisions of the dental laws shows that from the beginning they have been recognized as competent to practice dentistry, and that it is a part of their professional duties; and no doubt the provision exempting them was incorporated for the sole purpose of giving expression in the law to what is a recognized fact and to foil any attempt to prevent them from practicing all branches of their profession through any narrow interpretation of the law."

In *State* v. *Vandersluis*, 42 Minn. 129, the court, in speaking of a similar law, says: "The act before us could hardly be so construed as to limit the right of the surgeon under his license."

Again, it is to be borne in mind that the statutes under consideration are highly penal in their nature. And it is a familiar rule that, in the construction of such statutes, if there is a reasonable doubt as to whether the acts done are within the meaning of the statute, the person accused of the violation thereof is entitled to the benefit of that doubt. Endlich on Int. of Stat. §§ 329–30; *State* v. *Mylod, supra,* at p. 637; *Commonwealth* v. *Standard Oil Co.,* 101 Pa. St. p. 150; *Schooner Enterprise,* 1 Paine Cir. Ct. Rep. 32; *Hines & Battle* v. *Railway Co.,* 95 N. C. 434; *State* v. *Drowne,* 20 R. I. 302, on p. 306.

For the reasons above given, we are of opinion that it was not the intention of the General Assembly, in the passage of said chapter 155 and the amendments thereto, to preclude physicians and surgeons from practicing dentistry; or, at any rate, that there is a reasonable doubt whether they were intended to be thus precluded; and hence the demurrer must be overruled and the plea sustained.

Demurrer overruled, plea in bar sustained, and indictment quashed.

·*Charles F. Stearns, Assistant Attorney-General,* for State.

*Frank F. Nolan,* for defendant.